## IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

DAVID T. SPEECE,           )
                                   )
          Plaintiff,         )
                                   )
vs.                         )     Case No. 08-CV-469-TLW
                                   )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
                                 )
         Defendant.       )

## ORDER AND OPINION

Plaintiff David Speece seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income ("SSI") benefits under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 8].

## Background

Plaintiff was born on January 24, 1962, and was 44 years old on the date of the hearing before the Administrative Law Judge ("ALJ"). [R.27]. Plaintiff has a 10th grade education, with a limited ability to read. [R. 27-28]. Plaintiff is married and has two children, ages 16 and 17. [R. 27]. From 1989 until 2004, plaintiff owned and operated a semi-truck and trailer. From 2003 to 2005, plaintiff was employed with Trimac Transportation as lead shop mechanic, repairing and

---

[1] Plaintiff's application for disability insurance benefits and SSI was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Charles Headrick was held on May 21, 2007. [R. 23]. By decision dated August 14, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 12]. The Appeals Council denied plaintiff's request for review on July 10, 2008.[R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

maintaining semi-trucks and trailers.  [R. 173].  Plaintiff claims he was terminated by Trimac on August 27, 2005, because of his high blood pressure.  [R. 28].  He claims blood pressure caused him to injure his neck, back and leg while using a prybar to lift a blower and mower weighing approximately 3,500 pounds, onto a trailer. [R. 361].  Plaintiff was awarded worker's compensation benefits as a result of the injury.  [R. 362].  In his application, plaintiff claimed to be unable to work since August 27, 2005, as a result of his injury at Trimac which gives rise to back problems, diabetes, carpal tunnel syndrome in his right wrist and nerve problems in his right wrist.  [R. 26,127].

In assessing plaintiff's qualification for disability benefits and SSI, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since August 27, 2005, the alleged onset date, and that plaintiff met the insured status requirements under the Act.  [R. 14].  At step two, the ALJ determined plaintiff's severe impairment to be degenerative disk disease of the cervical and lumbar spine.  The ALJ noted that plaintiff has diabetes and obesity, but there was a lack of evidence that these problems significantly limited his ability to work.  [R. 14].  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, because none of plaintiff's impairments affected his ability to ambulate effectively or use his extremities for fine and gross movements.  [R. 14].  The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work, restricted to:  occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8 hour workday, sit at least 6 hours in an 8 hour work day, with a limited ability to push and/or pull with the upper extremities; and a limited ability to read.  [R. 15].  At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a truck mechanic and truck driver, which required him

to lift 50 pounds.  [R. 16].  The ALJ found transferability of job skills was not material to the

determination of disability.  [R. 17].  At step five, the ALJ considered plaintiff's age, education,

work experience, RFC, and the Medical-Vocational Guidelines ("Grid") and found that plaintiff has

the capability to perform light work restricted by the limitations addressed above.  The ALJ

consulted a vocational expert to determine the extent those limitations impeded the ability of plaintiff

to perform work in the national economy.  The vocational expert listed four unskilled jobs which met

the qualifications:  laundry sorter, video rental clerk, labeler and sorter.  [R. 17].  Thus, the ALJ

concluded that plaintiff was not disabled within the meaning of the Act.  [R. 18].  This finding was

the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.

1988) (discussing the five steps in detail).[2]

### Issue Raised

On appeal plaintiff argues the ALJ did not adequately discuss and analyze the medical

evidence in his decision.  [Dkt. # 18 at 3].  Plaintiff faults the ALJ because (1) the only evidence

mentioned is the consultative examination by Dr. Kenneth Trinidad, and the ALJ did not support his

finding with evidence in the record, (2) plaintiff's carpal tunnel syndrome was mentioned, but the

ALJ did not  support his findings with evidence; (3) there was no weighing of the evidence; and (4)

the ALJ's decision did not contain a statement of the case.

---

[2]  The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a
severe impairment, (3) has an impairment which meets or equals an impairment presumed by the
Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security
Regulations, (4) has an impairment which prevents her from engaging in her past employment, and
(5) has an impairment which prevents her from engaging in any other work, considering her age,
education, and work experience.  Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished)
citing Williams v. Bowen, 844 F.2d at 750-52.

## Discussion

A claimant for disability benefits bears the burden of proving that he is disabled.  42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 404.1512(a).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied.  See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).  Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

Initially, the Court observes that plaintiff asserts error because the "ALJ did not adequately discuss and analyze the medical evidence;" yet, plaintiff does not articulate how this failure establishes that the ALJ's decision is not supported by substantial evidence or that the wrong legal

4

standard was applied.  Plaintiff appears to challenge technical or harmless errors rather than identify

substantive errors in the decision rendered by the ALJ.  To the extent plaintiff's argument is directed

to the sufficiency of the evidence, the Court enters the following findings.

First, plaintiff claims the only evidence mentioned by the ALJ is the consultative examination

conducted by Dr. Kenneth Trinidad in September 2006 and that the ALJ's reliance on Dr. Trinidad's

opinion was not supported by evidence.  The Court disagrees.

The ALJ cited Dr. Trinidad's opinion as medical evidence to support his finding that

plaintiff's severe impairment is degenerative disk disease of the cervical lumbar spine, and although

severe, that this impairment did not prevent plaintiff from doing light duty work, with certain

limitations.  The ALJ stated:

> The claimant underwent an examination by Kenneth R. Trinidad,
> D.O. at the request of the claimant's worker's compensation attorney
> in September 2006.  The claimant had some limitation of motion in
> the cervical and lumbar spine and Dr. Trinidad opined that the
> claimant could not return to work as a mechanic and needed a light
> duty job.  (Exhibit 18F).

[R. 16].  This reference to Dr. Trinidad's opinion was not the only evidence relied on by the ALJ in

formulating his conclusion that plaintiff's back problem did not prevent him from performing light

duty work.  The ALJ also cited and relied on the opinion of Dr. Jeanne M. Edwards, M.D. who based

her opinion on a review of an MRI of plaintiff's lumbar spine performed on August 22, 2005.  [R.

206, 230].  Dr. Edwards noted:

> The cervical MRI demonstrates a prominent right parasagittal
> foraminal disk protrusion which narrows the right lateral recess and
> right foramen.  The right anterior cord surface is also slightly
> flattened.  Disk bulging is also prominent at C3-4 and bilateral
> foraminal narrowing is present at that level as well as C4-5.  There is
> also prominent disk bulging with mild central canal narrowing at C5-

5

> 6.   The lumbar MRI reveals disk bulging at L4-5 and very mild
> bilateral foraminal narrowing.  At L5-S1 there is mild disk bulging
> with a posterior central annulus fibrosis tear.

[R. 206].  In consideration of this objective medical evidence, Dr. Edwards opined that plaintiff has

"degenerative changes in his lumbar region" but observed that plaintiff's gait was within normal

limits and that plaintiff was able to tandem walk with mild difficulty.  [R. 210].  Dr. Edwards'

opinion corroborated the opinion of Dr. Trinidad.  The ALJ adopted Dr. Edwards' opinion by citing

to his report (Exhibit 3F), stating:

> Although claimant had some disk bulging in the lumbar and cervical
> spine, his gait is within normal limits. . . .(Exhibit 3F).

[R. 16, 206].  The plaintiff offered no evidence in the records which contradicted the ALJ's finding

and conclusion that plaintiff's back problems did not prevent him from working.  Thus, the Court

finds that the ALJ's determination is supported by substantial evidence in the record.

Second, plaintiff claims that the ALJ mentioned plaintiff's carpal tunnel syndrome but did

not point to any evidence to support his finding that plaintiff's carpal tunnel syndrome did not

prevent him from light work, with limitations.  The Court disagrees.  At the hearing, plaintiff

testified that he had been diagnosed with carpal tunnel syndrome of the right hand and that  he

sometimes loses complete control over his right hand.  Plaintiff and his attorney exchanged the

following dialogue:

> Q.   Mr. Speece, you mentioned to the judge about using your
> hands and that you have some weakness and stuff in your
> hands.  You have been diagnosed with carpal tunnel
> syndrome, is that correct?
>
> A.   That's right.
>
> Q.   Which hand is that in?

A.      The right hand.

Q.      Okay.  Do you think though, is the right hand worse than the
        left hand?

A.      Yes.  The right hand I lose completely [sic]control of it even
        sometimes, you know.  It's just if I'm trying to have a glass of
        milk, you know, with my lunch, there's times I might pick it
        up and it just, it, everything just turns loose on me and I lose
        control of it.

[R. 42].  The evidence of record was uncontroverted that plaintiff was diagnosed with carpal tunnel

syndrome.  Through apparent inadvertence, the ALJ did not list carpal tunnel syndrome as a severe

impairment.[3]  However, the ALJ expressly included plaintiff's carpal tunnel syndrome as one of

plaintiff's impairments, in combination with other impairments, in his assessment and formulation

of plaintiff's RFC, and in combination with other evidence, to evaluate the limiting effects of his

combined impairments.  In an obvious reference to plaintiff's diabetes, obesity, back and neck

problems and carpal tunnel syndrome, and in direct response to plaintiff's testimony of his inability

to control his extremities, the ALJ entered the following findings:

> The claimant has no impairment that results in the inability to
> ambulate effectively or the inability to perform fine and gross
> movements effectively.  The claimant does not require the use of an
> assistive device for ambulation and the evidence does not show that
> the claimant is unable to use the extremities for fine and gross
> movement.  Thus, the undersigned finds that the claimant does not
> have an impairment or combination of impairments that meets or

---

[3]  Plaintiff did not raise as error the omission of carpal tunnel syndrome as a severe
impairment but claims instead that the ALJ did not point to any evidence to support his findings that
carpal tunnel did not prevent plaintiff from light work.  The Court finds that the ALJ's failure to
identify carpal tunnel as a severe impairment is harmless error because, as discussed infra, the ALJ
did incorporate plaintiff's carpal tunnel disorder within his assessment of plaintiff's ability to
perform light work, with limitations.

medically equals any impairment found in appendix 1 to subpart P of
Regulations No. 4.

[R.15].  Further, the ALJ did support his finding with citation to plaintiff's medical records.  Again,

the ALJ cites and relies on an August 30, 2005 report prepared by Dr. Jeanne Edwards, M.D. who

based her opinion on objective medical evidence.  In reviewing the results of an ENG and nerve

conduction performed on plaintiff, Dr. Edwards opined:

> **Brief History**:  David Speece returns to the office today for
> evaluation of his right upper and right lower extremity pain.  The
> results of the EMG and nerve conduction were reviewed with the
> patient.  This definitely reveals a right carpal tunnel syndrome.  In
> addition, there is a suggestion of a C7-C8 radiculopathy.  An early
> neuropathy cannot be totally excluded although is less likely.  The
> patient would prefer conservative treatment at this time.  He reports
> that he has difficultly with his stomach and so will not institute an
> anti-inflammatory agent, but rather consider a trial of Gabapentin.
>
> **Impression**:  Patient with degenerative disease in the lumbar spine,
> a probable C7-8 radiculopathy, and carpal tunnel syndrome.  At this
> time, the patient would prefer conservative management.
>
> **Recommendation**:
> 1) Trial of Gabapentin 300 mg b.i.d. gradually increasing as tolerated
> 2) Referral to dietitian for weight reduction
> 3) Bracing for carpal tunnel
> 4) Call for any problems
> 5) Return to office in four weeks

[R. 12].  In citing Dr. Edwards' report to support his finding that plaintiff's carpal tunnel syndrome

did not limit plaintiff's ability to do light work with limitations, the ALJ pointed out plaintiff's

election that he "would prefer conservative management" of this impairment.  The ALJ stated:

> The claimant had electromyogram (EMG) testing that showed right
> carpal tunnel syndrome but the claimant elected to undergo
> conservative treatment (Exhibit 3F).

[R. 16].  Plaintiff's voluntarily election to treat his carpal tunnel syndrome with conservative

8

treatments rather than aggressive measures which might improve his condition is a relevant consideration in determining plaintiff's ability to work.  See, e.g., Watson v. Barnhart, 194 Fed. Appx. 526, 530 (10th Cir. 2006) (unpublished)[4] (citing Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988)).  Moreover the ALJ accommodated plaintiff's carpal tunnel syndrome by restricting plaintiff's RFC to light exertional work and "a limited ability to push/pull with the upper extremities."  [R. 16].  The ALJ based this restriction on the analysis of Dr. Janet G. Rodgers, medical consultant, who opined:

> He had a consultative neurological exam by Jeanne M. Edwards, M.D. on 8/24/05 and for a follow up exam on 8/30/05.  His gait was within normal limits.  She did EMG which confirmed a right carpal tunel [sic] syndrome.  The claimant is right handed.  He preferred conservative treatment at that time.  Push/pull activities of the right upper extremity would need to be limited since these activities will aggrevate [sic] problem and cause pain.

[R. 249].  The Court finds that the ALJ did properly consider plaintiff's carpal tunnel syndrome, in combination with other impairments in formulating plaintiff's RFC and that the ALJ supported his finding by reference to medical evidence in the record.

Next, plaintiff faults the ALJ for not weighing and analyzing the medical evidence. Specifically, plaintiff objects to the ALJ giving less weight to Dr. Trinidad's opinion that plaintiff was "temporarily totally disabled from August 2005 until September 2006" as inconsistent with the balance of the medical record; and giving more weight to the medical opinion of the agency physician as "consistent with the record as a whole."  [Dkt. # 18 at 4].  Plaintiff claims the ALJ should have provided "a clear rationale for his decision" to give lesser weight to the opinion of

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

plaintiff's treating physician, Dr. Trinidad.  The Court disagrees.  In his decision, the ALJ weighed

the opinions and found the State Agency physician's opinion was consistent with the evidence of

record.  The ALJ wrote:

> As for the opinion evidence, the undersigned has reviewed the
> opinion of Dr. Trinidad that the claimant was "temporarily totally
> disabled" from August 2005 until September 2006, but this statement
> is not consistent with the balance of the medical record.  Thus, the
> conclusion regarding the claimant's ability to perform work-related
> activities cannot be assigned controlling weight.  Further, the
> undersigned must note that the definition of "disabled" with respect
> to worker's compensation is not the same as the social security
> definition, which is to be determined by the Commissioner.  The
> opinions of the DDS physician are consistent with the record as a
> whole and thus the undersigned affords greater weight to these
> opinions.

[R. 16].  From the Court's review, there is no indiction in the record that Dr. Trinidad was plaintiff's

treating physician.  Dr. Trinidad performed a consultative examination of plaintiff at the request of

his attorney, Eric Quandt, for worker's compensation purposes.  [R. 361].  Thus, the ALJ was not

required to give greater weight to Dr. Trinidad's opinion.  To the extent plaintiff is asking this Court

to reweigh the evidence, that is an impermissible request.  The Court can only review the sufficiency

of the evidence, not its weight, see Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007), and

there is sufficient evidence to support his decision.  Moreover, although Dr. Trinidad opined that for

worker's compensation purposes, plaintiff was "temporarily totally disabled from August 2005 until

September 2006," he also opined that plaintiff "should undergo vocational re-training to place him

in light duty work."  [R. 364].  This opinion is consistent with the ALJ's conclusion, and there is

sufficient evidence to support that conclusion.  The Tenth Circuit instructs the ALJ need not consider

every piece of evidence in the record, rather he must "discuss the uncontroverted evidence he

10

chooses not to rely upon, as well as significantly probative evidence he rejects." <u>Clifton v. Clifton</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "It is improper for the ALJ to pick and choose among reports, using evidence favorable to his position while ignoring other evidence." <u>Hardman v. Barnhart</u>, 362 F.3d 676, 681 (10th Cir. 2004). In this instance, the ALJ complied with these directives. Further, because Dr. Trinidad's opinion that plaintiff could do light duty work, is consistent with the ALJ's conclusion, no further analysis was necessary. "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." <u>Howard v. Barnhart</u>, 379 F.3d 945, 947 (10th Cir. 2004).

Finally, the plaintiff objects that the ALJ's decision did not contain a statement of the case as required under 42 U.S.C. § 405(b)(1), [Dkt. 18 at 5], which provides:

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reasons upon which it is based.

<u>Id.</u> Plaintiff proffers this argument in conclusory form without identifying any additional or contradictory evidence that the ALJ purportedly failed to consider in rendering his decision. Mere conclusory allegations are insufficient to support reversal of the ALJ's determination.

## <u>Conclusion</u>

The Court finds that the ALJ decision is supported by substantial evidence in the record and the correct legal standard was applied. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 3rd day of September, 2009.

T. Lane Wilson
United States Magistrate Judge